UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NICHOLAS WEIR,

                                Plaintiff,

                                                    **MEMORANDUM AND ORDER**
            - against -                                 19-CV-2223 (RRM)

UNITED STATES CITZENSHIP AND
IMMIGRATION SERVICE (USCIS); NEW YORK
DISTRICT DIRECTOR THOMAS CIOPPA (official
and individual capacities), and ISO I. BOLIVAR (official
and individual capacities),

                                Defendants.
-----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

Plaintiff Nicholas Weir, proceeding *pro se*, seeks a writ pursuant to the Mandamus Act,

28 U.S.C. § 1361 ("Mandamus Act"), and the Administrative Procedure Act, 5. U.S.C. § 701, *et*

*seq.* ("APA"), directing defendant United States Citizenship and Immigration Service ("USCIS")

to issue a decision on Weir's N-336 Request for a Hearing on a Decision in Naturalization

Proceedings ("N-336") under Section 336 of the Immigration and Naturalization Act ("INA"), 8

U.S.C. § 1101, *et seq.*  (Compl. (Doc. No. 1).)  Defendants now move to dismiss the complaint

under Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.  For the

reasons set forth below, defendants' motion is granted.

## BACKGROUND

On August 16, 2013, Weir obtained conditional permanent resident status in immigrant

classification CR6, as the spouse of a United States citizen; the conditions were removed on

October 16, 2017.  (Declaration of Mary M. Dickman ("Dickman Dec."), Ex. A (Doc. No. 24-4)

at 3.)[1]  On January 17, 2017, USCIS received Weir's Form N-400 application for naturalization,

---

[1] All page numbers correspond with ECF pagination.

and on September 28, 2017, Weir appeared for an interview to determine his eligibility for naturalization.  (*Id.*)

During this interview, Iso Bolivar asked Weir if he would be willing to bear arms on behalf of the United States and perform noncombatant service in the U.S. Armed Forces when required by law, which is an affirmation contained in the oath of renunciation and allegiance to be taken before admission for citizenship.  (*Id.*; *see also* 8 U.S.C. § 1448 ("A person who has applied for

naturalization shall, in order to be and before being admitted to citizenship, take . . . an oath (1) to support the Constitution of the United States; . . . and (5)(A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law."))  Weir responded that he was not willing to bear arms and perform noncombatant service in the U.S. Armed Forces when required by law.  (Dickman Dec., Ex. A at 3.)  In an addendum to his Form N-440, Weir stated that his "belief system," which is "deeply held and is used as a guidance for my life choices," restricted him from affirming that he would bear arms on behalf of the United States and perform noncombatant service in the U.S. Armed Forces when required by law.  (*Id.*)

After the interview was completed, Bolivar gave Weir a Form N-14 Application, requesting a notarized statement regarding Weir's refusal to bear arms and/or perform noncombatant service in the U.S. Armed Forces when required by law.  (*Id.*)  The form asked Weir to explain his refusal in detail and also to explain the root of his beliefs.  (*Id.*)  Weir thereafter submitted a notarized statement in which he stated that "my personal belief system

2

originated in 2009." (*Id.*)  Weir's statement neither explained the origination of his belief nor identified his belief system as being anything other than personal.  (*Id.*)

On October 21, 2017, USCIS issued a decision, based on Weir's testimony and notarized statement, denying Weir's application for naturalization because

> You have not demonstrated an attachment to the principles of the U.S. Constitution or [willingness] to take the full Oath of Allegiance.  Specifically, you stated that you are unwilling to bear arms on behalf of the United States when required by law and perform noncombatant service in the U.S. Armed Forces when required by law. You did not establish that your unwillingness is based on religious training and belief or a deeply held moral or ethical code.  Therefore, you do not qualify for a modification of the oath, and you are ineligible for naturalization.  See INA 337(a) [8 U.S.C. § 1448(a)].

(Dickman Dec., Exhibit A at 2–3.)  The decision stated that if Weir believed he could "overcome the grounds for this denial," he could request a hearing by submitting Form N-336.  (*Id*. at 3.)

On or about February 6, 2018, Weir submitted his N-336.  (Dickman Dec., Exhibit B (Doc. No. 24-5).)  Weir was granted a hearing, which took place on August 29, 2018.  (*Id.*) USCIS thereafter determined that Weir had failed to adequately explain his belief system and asked him to return for a second interview, which was scheduled to take place on April 5, 2019. (*Id.*)  Weir neither appeared for the interview as scheduled nor requested that the interview be rescheduled.  (*Id.*)  On April 17, 2019, USCIS issued a notice of decision on the Form N-336, reaffirming the denial of Weir's N-400.  (*Id.*)

The Complaint

Weir commenced this action on April 16, 2019, requesting that the Court compel USCIS, through Bolivar, to issue a determination on his N-336.  (Compl. (Doc. No. 1) at 2.)  Weir also alleges that Thomas Cioppa unlawfully denied his N-400 and that Bolivar was unable to justify the denial.  (*Id*. at 1.)  He further claims that "it is very clear that the government is retaliating for engaging in protected activities in federal and state courts" and engaging in "deception and

corruption" in handling his applications. (*Id.*) In a letter filed with the Court, Weir alleges that Bolivar was uninterested in reviewing his appeal and "more interested in finding an excuse to deny" the appeal. (Plaintiff's Letter Opposing Defendants' Request for an Extension of Time and Request for Default Judgment (Doc. No. 11) at ¶ 9.)

Service of the Complaint

The complaint was served upon the United States Attorney for the Eastern District of New York on April 23, 2019. (Dickman Dec. at ¶ 3.) In a motion filed on July 15, Weir requested additional time to serve the summons and complaint upon Cioppa and Bolivar in their individual capacities. (Doc. No. 12.) The Court granted this request, giving Weir until August 15, 2019, to serve process upon Cioppa and Bolivar. (Order dated 7/17/2019.) Weir filed an Affidavit of Service on October 30, 2019, that contains a sworn statement from a process server indicating that a copy of the summons and complaint was delivered on August 9, 2019 to "a CORPORATION" through "David Sole as AUTHORIZED AGENT for IMMIGRATION SERVICE OFFICER I. BOLIVAR" at 30 Barretts Avenue, Holtsville NY, 11742. (Doc. No. 20-1.) He also filed an Affidavit of Non-Service on the docket on November 7, 2019, stating that a process server attempted to serve Thomas Cioppa on August 1, 2019, at 26 Federal Plaza, New York, NY, but service was refused at that location. (Doc. No. 22.)

The Instant Motion

Defendants now move to dismiss the complaint under Rules 12(b)(1), (12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. (Notice of Motion (Doc. No. 24).) In support of their motion to dismiss under Rule 12(b)(1), defendants argue that Weir's writ of mandamus was mooted when USCIS issued a response to Weir's N-336 application, and so this Court lacks subject matter jurisdiction. (Defendants' Memorandum in Support ("Def.'s Mem.") (Doc. No.

24-6) at 8–10.)  Defendants also argue that Weir's claims against Cioppa and Bolivar in their individual capacities request only that they be compelled to respond to his N-336 application; because equitable relief can only be obtained against government officials in their official, not individual, capacities, defendants assert that Weir's claims against Cioppa and Bolivar in their individual capacities must be dismissed for lack of jurisdiction.  (*Id*. at 10–11.)  Defendants also move to dismiss the claims against Cioppa and Bolivar pursuant to Rule 12(b)(5), because, they claim, Weir has failed to serve either of them with a summons and complaint.  (*Id*. at 11.)  Finally, defendants argue that the individual claims against Cioppa and Bolivar must be dismissed under Rule 12(b)(6) because Weir has failed to allege that either defendant engaged in an act or omission that violated his Constitutional rights, and moreover has failed to allege a cognizable claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  (*Id*. at 11–12.)

In response, Weir argues that Cioppa was apprised of his allegations of misconduct and argues that defendants have deviated from their own policies in failing to send him a new green card and in handling his N-336 application.  (Affirmation in Opposition to Motion to Dismiss ("Pl.'s Reply") (Doc. No. 23) at ¶¶ 2, 4.))  In addition, Weir disputes that Cioppa and Bolivar were not served, asserting that defendants' claim otherwise "is just another attempt of the many attempts to obstruct justice."  (*Id*. at ¶ 3.)  Moreover, Weir argues that he "sought to be refunded for expenses and damages," though "getting a lawful decision on his application was the prime judicial relief [sought] in the complaint."  (*Id*. at ¶ 6.)  Weir requests leave to amend his complaint to "elaborately enumerate those damages sought along with added details."  (*Id*.)

In response, defendants largely reiterate their prior briefing.  (Def.'s Response (Doc. No. 25).)  Though Weir requests to amend his complaint to include damages, defendants assert that

Weir has not alleged any facts that could provide a basis for a damages claim against either Cioppa or Bolivar.  (*Id*. at 5.)  Further, defendants assert that the claims against Cioppa and Bolivar must be dismissed under Rule 12(b)(5) because Weir's submitted affidavits of service indicate that Cioppa was not served and that service of process upon Bolivar did not comply with Section 308 of the New York Civil Practice Law and Rules.  (*Id*. at 3–5.)

In an unauthorized sur-reply, Weir requests that Cioppa and Bolivar be compelled to answer his complaint.  (Affirmation in Support of Motions ("Pl.'s Sur-Reply") (Doc. No. 27-1) at 1.)  Further, Weir argues that defendants' motion to dismiss should be thrown out entirely because "the factual allegations and invoked laws supporting the defendants' conduct remains unchallenged" and because defendants' brief was untimely filed.  (*Id*.)  Further, Weir requests a protective order against "defendants, arms of the defendants, and any other affiliated individuals," who have engaged in "daily physical attacks" and "have taken drastic and coordinated measures to undermine my career and life."  (*Id*. at 1–2; *see also* Affidavit in Support (Pl.'s Aff.") (Doc No. 27-2) ("There have been hundreds of attempts at my life and thousands of physical harm[s] done to me by the government."))

## DISCUSSION

### I.  Defendants' Rule 12(b)(1) Motion

#### a.  Standard of Review Under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action where the court lacks subject matter jurisdiction – that is, "when the district court lacks the statutory or constitutional power to adjudicate" the case.  *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam)); FED. R. CIV. P. 12(b)(1).  Plaintiffs bear the burden of showing that

subject matter jurisdiction exists.  *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011).

On a motion to dismiss pursuant to Rule 12(b)(1), "a court accepts as true all the factual

allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."

*Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  Nevertheless, the district court may

refer to evidence outside the pleadings, such as documents or affidavits, without converting the

motion to one for summary judgment.  *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates

Co.*, 436 F.3d 82, 88 n.8 (2d Cir. 2006).

### b.   Whether Weir's claim to Compel a Response to his N-336 is moot

Article III of the United States Constitution limits the jurisdiction of federal courts to

"cases" and "controversies."  U.S. Const., Art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 559 (1992).  As a result, "at all times, the dispute before the court must be real and

live, not feigned, academic, or conjectural[,]" and "[t]he requisite dispute must persist throughout

the litigation . . . ."  *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*,

260 F.3d 114, 118 (2d Cir. 2001).  A case becomes moot when there are no longer "live" issues

or parties with a "legally cognizable interest in the outcome."  *Cnty. of Los Angeles v. Davis*, 440

U.S. 625, 631 (1979) (internal quotation marks and citation omitted).  More specifically, a claim

that seeks to compel a federal official to act becomes moot when the official performs that act.

*See Barrett v. United States*, 105 F.3d 793, 794–95 (2d Cir. 1996) (a claim for an order directing

a district court judge to rule on a motion becomes moot when the judge ruled on that motion);

*see also Xian Yong Zeng v. Kerry*, 226 F. Supp. 3d 645, 648 (E.D.N.Y. Jul. 19, 2017) (holding a

request for a writ of mandamus directing a Consulate to adjudicate an application to be moot

where the Consulate has already issued a decision on the application).

Here, Weir filed this writ of mandamus to compel USCIS and Bolivar to respond to his N-336 application, which it did on April 17, 2019, just one day after Weir filed the complaint. Therefore, Weir's claims against USCIS and Bolivar became moot when USCIS performed the action Weir sought to compel them to perform. Because Weir's claims against USCIS and Bolivar are moot, they are dismissed for lack of subject matter jurisdiction.

### c. Whether this Court lacks subject matter jurisdiction for Weir's claims against Cioppa and Bolivar in their individual capacities

Weir does not articulate any specific claims against Cioppa and Bolivar in his writ of mandamus, though they are both named as defendants in both their individual and official capacities, nor does he specify the relief sought from them. (*See generally* Compl.) Defendants construe Weir's suit against these two defendants in their individual capacities as bringing *Bivens* claims. (Defs. Mem. at 11–12.) *Bivens* permits suit against federal officials in their individual capacities for violations of constitutional rights in limited contexts. 403 U.S. at 395–97. However, equitable relief can only be obtained against federal officials in their official, not individual, capacities. *See Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("[S]uch equitable relief . . . could be obtained against Relin only in his official, not his individual, capacity.") Defendants urge the Court to dismiss Weir's claims against Cioppa and Bolivar in their individual capacities because Weir's requested relief – compelling them to respond to his N-336 application – is equitable, and thus is not available under a *Bivens* claim. Though defendants are correct that such relief is not available under *Bivens* and thus the Court lacks subject matter jurisdiction, Weir asserts in his reply that he also seeks "to be refunded for expenses and damages." (Pl.'s Reply at ¶ 6.) Because it appears that Weir's claims against Cioppa and Bolivar in their individual capacities may include a claim for money damages, this Court proceeds to address defendants' Rule 12(b)(5) motion.

8

## II.     Defendants' Rule 12(b)(5) Motion

### a.   Standard of Review Under Federal Rule of Civil Procedure 12(b)(5)

Rule 12(b)(5) "authorizes dismissal of a complaint for insufficient service of process upon motion by a defendant made prior to the defendant's filing an answer." *Forte v. Lutheran Augustana Extended Care & Rehad. Ctr.*, No. 09-CV-2358 (RJD) (JMA), 2009 WL 4722325, at *2 (E.D.N.Y. Dec. 9, 2009). "In deciding a Rule 12(b)(5) motion, "[a] court looks to materials outside of the pleadings in determining whether service of process has been insufficient." *Keller v. Star Nissan, Inc.*, No. 09-CV-4551 (ENV) (SMG), 2009 WL 4281038, at *4 (E.D.N.Y. Nov. 30, 2009). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Obot v. Navient Solutions, Inc.*, 726 Fed. App'x. 47, 47 (2d Cir. 2018) (summary order) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). "If the court determines that service of process was insufficient, the court may, but is not required to, dismiss the action." *Harrison v. New York*, 95 F. Supp. 3d 293, 312 (E.D.N.Y. 2015) (Bianco, J.) (citations omitted).

### b.   Service Under Rule 4

To serve an officer sued in his or her individual capacity, under Rule 4(i)(3), "whether or not the officer or employee is also sued in an official capacity[], a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." To properly serve an individual under Rule 4(e),

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

### c. Service of Process as to Cioppa

Defendants argue that Cioppa was not properly served under Rule 4(e), as demonstrated by Weir's Affidavit of Non-Service, and the Court agrees.  On July 17, 2019, the Court granted Weir's request for an extension to serve Cioppa and Bolivar in their individual capacities. (Docket Order dated 7/17/2019.)  In that request, Weir represented that he had already served Cioppa and Bolivar in their official capacities.  The Affidavit of Non-Service states that on August 1, 2019, a process server tried and failed to serve Cioppa at 26 Federal Plaza.  Weir does not provide further evidence of an attempt to serve Cioppa through any of the other means provided in Rule 4(e).  In response to defendants' assertion that Cioppa has not been served, Weir states, "whether the USCIS is misleading Mrs. Dickman or both [are] working together to present misleading statements [this] is just another attempt of the many attempts to obstruct justice.  The plaintiff has served or attempted to serve both defendants in their individual capacities."  (Pl's Reply ¶ 3.)  Weir then directs the Court's attention to the Affidavit of Non-Service.  (*Id*.)  Though Weir believes that defendants' arguments regarding service are disingenuous or misleading, it is Weir who bears the burden to show adequate service, which he fails to do here, despite receiving additional time to serve Cioppa.  *See Burda*, 417 F.3d at 298. Accordingly, Weir's claims against Cioppa in his individual capacity are dismissed.

### d. Service of Process as to Bolivar

Defendants also assert that Bolivar was not properly served under Rule 4(e) because the service effectuated as documented by Weir's Affidavit of Service does not comply with New York law. Rule 4(e) provides four mechanisms through which an individual can be served, including, under Rule 4(e)(2)(c), delivering a copy of the summons and complaint to "an agent authorized by appointment or by law to receive service of process." The Affidavit of Service indicates that the process server served the summons and complaint to David Sole "as AUTHORISED AGENT" for Bolivar. (Doc. No. 20–1.) Defendants argue that Bolivar could not have been properly served under this section because the Affidavit of Service states that the process server served "a CORPORATION," and Bolivar is an individual. Defendants cite no case law to support that service that otherwise complies with Rule 4(e)(2)(c) must be invalidated because the process server incorrectly identified the subject as a corporation instead of an individual. Therefore, defendants' motion to dismiss under Rule 12(b)(5) is denied as pertains to the service of process upon Bolivar in her individual capacity.

### III. Defendants' Rule 12(b)(6) Motion

### a. Standard of Review Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. Of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  The Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris*, 572 F.3d at 72 (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").  Notwithstanding the liberal pleading standards granted to a *pro se* plaintiff, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist."  *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995).  Where a *pro se* plaintiff has altogether failed to satisfy a pleading requirement and the allegations in the complaint do not raise a plausible claim to relief, dismissal is warranted.  *See Twombly*, 550 U.S. at 558; *see also Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).  Moreover, a district court generally should not dismiss a *pro se* complaint without permitting at least one opportunity to amend.  *See Xian Yong Zeng v. Pompeo*, 740 F. App'x 9, 10 (2d Cir. 2018) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

In reviewing the sufficiency of the factual allegations asserted under Rule 12(b)(6), courts may look to the pleadings, any documents that are incorporated therein or annexed thereto, "matters of which judicial notice may be taken," and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 451–52 (E.D.N.Y. 2007) (Glasser, J.) (internal

quotation marks and citation omitted); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  "Agency determinations and administrative findings are public records of which a court may properly take judicial notice."  *Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012) (Feuerstein, J.); *see also* FED. R. EVID. 201.

### b.  Weir's Claims Against Bolivar in her Individual Capacity

"To state a claim under *Bivens*, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Gray v. Metro. Det. Ctr.*, No. 09-CV-4520, 2011 WL 2847430, at *10 (E.D.N.Y. July 15, 2011) (Matsumoto, J.). (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Without allegations of personal involvement on behalf of the official, a *Bivens* claim against that official must be dismissed.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (holding that *Bivens* claims must be brought against an officer "for his or her own acts, not the acts of others….")

Weir states that he seeks damages relating to Bolivar's handling of his appeal of his N-336, which he claims was wrongfully denied.  To the extent that Weir is bringing a claim under *Bivens*, he has failed to plead sufficient facts to demonstrate that Bolivar engaged in any kind of unconstitutional act or failure to act in the handling of the N-336 appeal itself, nor does Weir allege an unconstitutional act or failure to act when he states that Bolivar appeared uninterested in his appeal.  Appearing uninterested is not a Constitutional violation.  Accordingly, Weir's *Bivens* claim against Bolivar in her individual capacity is dismissed.

### c.  Requests for Miscellaneous Relief

Weir filed an unauthorized sur-reply with this Court, accompanied by a letter that he filed in triplicate.  (*See* Pl.'s Sur-reply; *see also* Doc. Nos. 27-2, 29, 30.)  In his sur-reply, Weir

13

requests various forms of relief, including compelling Bolivar and Cioppa to reply to his complaint; expediting the instant motion; and granting him a protective order against "the defendants and arms of the defendants, and any affiliated individuals" who are engaged in "daily physical attacks" and "have taken drastic and coordinated measures to undermine my career and life." (Pl.'s Sur-Reply at ¶¶ 3, 5, 7–8.)  He also requests leave to amend his complaint to include claims brought under the Third, Fourth, and Fourteenth Amendments, as well as the Federal Tort Claims Act (FTCA).  The accompanying letter includes a variety of allegations of attacks and harm done to Weir by the government, his neighbors, and local police. (*See* Doc. Nos. 27-2, 29, 30.)

The Court does not generally address claims raised for the first time in response to a motion to dismiss, since they do not give defendants "fair notice." *Lombardo v. Dr. Suess Enterprises, L.P.*, 16-CV-9974 (AKH), 2017 WL 1378413, at *4 (S.D.N.Y., Apr. 7, 2017) (declines to grant plaintiff leave to amend complaint to properly allege claims first referenced in the plaintiffs' opposition brief) (citing *Campoli v. HealthExtras, Inc.*, 232 Fed. App'x. 20, 22 (2d Cir. 2007) ("Complaint did not confer 'fair notice' to the defendant…No such claim was expressly included in the complaint, and…the elements of such a claim were not implied thereby or by the documents attached to the complaint.")).

However, even if such allegations had been made in the complaint, Weir would not be entitled to relief.  Weir's allegations of a broad conspiracy of daily physical attacks and attempts to undermine his career are vague and conclusory.  Weir does not identify any facts to support his purported claims under the Third, Fourth, or Fourteenth Amendments, nor does he allege any facts to support his FTCA claims.  Further, Weir does not provide any basis for his request for a protective order against "defendants and arms of the defendants, and any affiliated individuals."

14

To the extent that Weir includes USCIS in his request, he appears to be requesting a protective order against the entire United States government.  Because Weir has altogether failed to set forth allegations that give rise to a plausible claim of relief, these claims are dismissed.

Finally, Weir has provided no basis for his request for "expenses," insofar as he is referring to a reimbursement of the costs of filing this action and submitting his N-440 and N-336 forms.  Though it may be possible for a plaintiff to recover costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.* ("EAJA"), Weir does not specify this in his complaint or address the issue in his briefing, and so this claim must be dismissed.  *See Richards v. Napolitano*, 642 F. Supp. 2d 118, 135 (E.D.N.Y. 2009) (denying costs under the EAJA where neither party had briefed the issue).

## IV.    Leave to Amend

"A pro se complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

While the Court does not see any basis for liability on Weir's claims against Bolivar and Cioppa, in an abundance of caution and in light of Weir's *pro se* status, the Court grants thirty (30) days' leave to amend so Weir can replead his claims against the individual defendants in compliance with the requirements set forth in this Memorandum and Order.  Because *Bivens* actions are disfavored and available only in limited circumstances, *see Ziglar v. Abbasi*, 137 S. Ct. 1843, Weir must identify some other legal basis for a claim against Cioppa and Bolivar. Additionally, should Weir choose to include his FTCA claim in the amended petition, he must

15

allege a tort, citing specific facts.  Finally, should Weir wish to pursue his claim for expenses, he should specify that he is doing so under the EAJA and state the basis on which he claims such relief.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted.  Weir is granted leave to amend his complaint within 30 days from the entry of this Memorandum and Order. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Order.  If Weir fails to file an amended complaint within 30 days, the complaint shall be dismissed without prejudice, and judgment shall enter.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  No summonses shall issue at this time, and all further proceedings shall be stayed for 30 days.  The Clerk of Court is respectfully directed to mail a copy of this Order to the *pro se* plaintiff and to note the mailing on the docket.

SO ORDERED.


Dated: Brooklyn, New York               *Roslynn R. Mauskopf*
      September 28, 2020

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge

16