UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

NICHOLAS WEIR,

                Plaintiff,           **MEMORANDUM & ORDER**
                                    19-CV-2223(EK)

        -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, et al.,

                Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        This action arises from plaintiff Nicholas Weir's
application for naturalization as a United States citizen.  U.S.
Citizenship and Immigration Services ("USCIS") denied Weir's
application on the ground that he declined to take the standard
oath of allegiance to the United States and did not qualify for
a modified oath.  In response, Weir brought this suit against
USCIS.  He also sued two individuals, Thomas Cioppa (a former
New York District Director of USCIS) and "I. Bolivar" (an
Immigration Services Officer) — both in their official and
individual capacities.  Weir is proceeding *pro se*.

        The amended complaint begins with a list of twenty-one
bullet points, each apparently intended to name a cause of
action.  A separate set of factual allegations follows, but the
complaint does not specify which defendants are the subject of

which claims, or which facts are pled in support of which.  Some of the listed causes of action are recognizable (*e.g.*, 42 U.S.C. § 1983, the Administrative Procedure Act, and the Federal Tort Claims Act).  Others are not (*e.g.*, "Tort doctrine of Alternative Liability" and "Negligent Indivisible Harm Caused by Separate Tortfeasors").  Nevertheless, given Weir's *pro se* status, the Court reads the complaint to make the strongest arguments that it suggests in support of any colorable claims.  Weir seeks money damages and injunctive relief — specifically, an order requiring USCIS to administer the modified oath.

The defendants now move to dismiss all claims.  They assert that the Court lacks jurisdiction over Weir's FTCA and civil rights claims due to the government's sovereign immunity.  Accordingly, they seek dismissal of those claims under Federal Rule of Civil Procedure 12(b)(1).  They also seek dismissal of those claims — and all others, excluding the APA claims — under Rule 12(b)(6).  Lastly, they ask for summary judgment on the APA claims based on the administrative record compiled before the agency.

For the following reasons, the amended complaint is dismissed in its entirety pursuant to Rules 12(b)(6) and 56.[1]

---

[1] Weir has moved to disqualify the undersigned judge from this matter, alleging, among other things, that the Court has "conspiratorial[ly] delayed" the resolution of this case.  ECF No. 88 at 1.  A federal judge "shall disqualify himself in any proceeding in which his impartiality might

## I.   Background

The following facts are taken from the amended complaint, ECF No. 47, and the Certified Administrative Record ("CAR") filed by the government in November 2022.  *See* ECF No. 94.  The complaint's allegations are presumed to be true at this stage.  *See In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  Moreover, as discussed below, the Court considers the administrative record for purposes of the summary judgment motion.

Weir obtained conditional permanent resident status in 2013 as the spouse of a U.S. citizen.  CAR 20-21.  In January of 2017, he submitted a Form N-400 Application for Naturalization. *Id.* at 47.  USCIS's Long Island Field Office received this application later that month.  *Id.* at 21.

In the application, Weir indicated that he was not willing to take the "full" oath of allegiance.  *See id.* at 46. Pursuant to the Immigration and Nationality Act, an applicant

---

reasonably be questioned" or where the judge "has a personal bias or prejudice concerning a party."  28 U.S.C. § 455(a), (b)(1).  That standard is not met here.  Indeed, "judicial rulings alone almost never constitute a valid basis for a bias or partiality [disqualification] motion."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Moreover, a claim of "inordinate" delay, without more, does "not constitut[e] a legal basis for recusal." *Aguinda v. Texaco, Inc.*, 139 F. Supp. 2d 438, 440 (S.D.N.Y. 2000); *see also United States v. Moritz*, 112 F.3d 506 (2d Cir. 1997) (unpublished table decision) (rejecting defendant's argument "that the district court's delay in its disposition is, in itself, enough to warrant recusal").  Weir uses the word "conspiratorial" but does not describe the contours of any alleged conspiracy.  Accordingly, the motion for disqualification is denied.

for naturalization must generally affirm that when required by law, he will (a) "bear arms on behalf of the United States," (b) "perform noncombatant service in the Armed Forces," or (c) "perform work of national importance under civilian direction." 8 U.S.C. § 1448(a).  To qualify for a modified oath — one that omits clauses (a) and (b) — the applicant must show by "clear and convincing evidence to the satisfaction of the Attorney General" that he is opposed to those activities based on his "religious training and belief," *id.*, or "a deeply held moral or ethical code."  USCIS Policy Manual, Vol. 12, Part J, Ch. 3.  In response to several questions relating to the oath, Weir registered his opposition to bearing arms or serving in a noncombatant role in the military, but not to performing civilian work of national importance.  *See* CAR 46.  He stated in an addendum to the application that his "belief system restricts [him] from affirming" that he would perform any military service — in combat or otherwise.  *Id.* at 27.

On September 28, 2017, Weir appeared for an interview to determine his eligibility for naturalization.  *Id.* at 21. Tracking the standard oath, Immigration Services Officer Clanton asked Weir if he would be willing to bear arms on behalf of the United States, or to perform noncombatant services in the Armed Forces, when federal law required.  *Id.*; Am. Compl. ¶ 6.  On the form provided to him, Weir crossed out the clauses of the oath

4

relating to military service, but not the clause regarding the
performance of civilian service — consistent with his answers on
the application.  CAR 50.  Following the interview, Clanton gave
Weir a supplemental application form (titled "N-400 Request for
Evidence").  The form instructed Weir to explain in detail:
(1) the nature of his personal beliefs that precluded him from
bearing arms, and (2) how serving in even a noncombatant role
would violate those beliefs.  *Id.* at 29.  In response, Weir
declared:

> Without going into too much details [*sic*] of my
> overall belief system, maintaining a moral character
> is one aspect of my belief system.  Another component
> of my belief system is to have utter free-will in any
> actions I am engaging in.  These two and a few others
> restrict me from affirming to the clauses to bear arms
> on behalf of the United States and to perform
> noncombatant service in the U.S. armed forces when
> required by law.  My belief system does not stem from
> any particular religious training.  Nonetheless, my
> belief system is deeply held and it is used as a
> guidance for my life choices.  . . . I will assist as
> best as I can in the midst of a national crisis within
> the confines of my belief system.

*Id.* at 25.

This explanation failed to persuade USCIS that Weir
was entitled to a modified oath.  The agency denied his
application in a decision issued on October 21, 2017.  *Id.* at
20–22.  That decision explained that Weir "did not establish
that [his] unwillingness is based on religious training and
belief or a deeply held moral or ethical code."  *Id.* at 22.

USCIS therefore deemed him to be "ineligible for naturalization," but explained that he could file a Form N-336 "Request for a Hearing on a Decision in Naturalization Proceedings" — effectively, an administrative appeal — if he believed he could "overcome the grounds for this denial." *Id.*[2]

Weir later sought that hearing. On February 1, 2018, he submitted a Form N-336*, see* CAR 1; on it, he argued that the information he had already provided was sufficient to qualify for the modified oath. *See id.* at 10-19.[3] Referring back to his prior statement, Weir wrote the following:

> I noted that my belief system is personal. In the denial statement, this fact was noted as though my belief system cannot be personal (self-contemplation). This is false. My belief system does not have to stemmed [*sic*] from any religious origin or training. My belief system must be "sincere, meaningful, and deeply held." I have expressed this on more than one occasions [*sic*]. My belief system is not based on or "include essentially political, sociological, or philosophical views.["] I was opened to questioning by the officer for transparency. Nonetheless, I recently came across the following statement. According to USCIS policy, "an officer must not question the validity of what an applicant believes or the existence or truth of the concepts in which the applicant believes."

---

[2] Pursuant to 8 C.F.R. § 336.2, within thirty days of a denial, the applicant "may request a hearing" "with an officer other than the officer who conducted the original examination or who rendered" the denial. The reviewing officer "may, in his or her discretion, conduct a full de novo hearing or may utilize a less formal review procedure." *Id.* § 336.2(b). During the review, the second officer "may receive new evidence" and take additional testimony. *Id.*

[3] Although Weir signed the application on October 31, 2017, *see id.* at 14, USCIS reports that he did not submit it until February of 2018 — beyond the thirty-day window provided by 8 C.F.R. § 336.2. *See id.* at 1. In the complaint, Weir alleges that the form "was mailed in within the required time period but was return[ed] a few times before finally being accepted in early February." Am. Compl. ¶ 9. In any event, the agency does not dispute that the filing was timely; that issue is therefore not before the Court.

CAR 12.  USCIS granted Weir a hearing, which occurred on August 29, 2018.  *Id.* at 1.  Weir testified, but USCIS determined that he had (once again) "failed to adequately explain in detail the philosophy" that would preclude him from taking an oath to serve any role in the U.S. military.  *Id.*[4]

Despite that determination, USCIS — in its discretion — offered Weir an additional opportunity to explain his views. Although the regulation requires only that the agency hold "a hearing," 8 C.F.R. § 336.2(b), USCIS scheduled a *second* hearing for April 5, 2019.  CAR 1, 3.  The agency sent him a letter dated February 27, 2019 to notify him of the interview date. *Id.*[5]  Weir did not attend this extra session, CAR 1; he alleges that he never received the letter.  Am. Compl. ¶ 18.  He says, however, that he received a voicemail from Bolivar on February 27 stating that "she needed him to come in for another interview," but she "did not state an interview date."  *Id.*  On April 17, USCIS reaffirmed its decision to deny Weir's application for naturalization.  CAR 1.  The agency reached this conclusion following a "complete review" of Weir's file, including the documentation he submitted, his statements at his

---

[4] The administrative record does not include a transcript, or any other documentation, of this hearing.

[5] While the regulation refers to a "hearing," 8 C.F.R. § 336.2(b), the parties appear to use the words "hearing" and "interview" interchangeably in this context.

naturalization interview, and his testimony at the subsequent
review hearing.  *Id.*

## II.  Discussion

## A.  Administrative Procedure Act Claims

Weir's complaint does not articulate how,
specifically, he believes USCIS violated the Administrative
Procedure Act.  Nevertheless, the Court construes the complaint
to raise two APA claims.

### 1.  Unlawful Delay

At one point in his complaint, Weir accuses USCIS of
"continued delay" in adjudicating his I-751, N-400, and N-336
applications.  Am. Compl. ¶ 15.  The APA authorizes a federal
court to "compel agency action unlawfully withheld or
unreasonably delayed."  5 U.S.C. § 706(1).  This claim is moot,
however, because USCIS has now adjudicated all three
applications.  *See* CAR 1, 20, 65.[6]  Thus, no relief remains
available on this claim: there is no need to compel agency
action that has already been taken, *see Bibicheff v. Holder*,
55 F. Supp. 3d 254, 261 (E.D.N.Y. 2014), and the APA does not
provide for monetary relief.  *See Am. C.L. Union v. Clapper*,
785 F.3d 787, 803 (2d Cir. 2015) (APA "waives sovereign immunity

---

[6] USCIS approved Weir's I-751 application in October of 2017, before
Weir commenced this action.  *See id.* at 65.  USCIS then issued a final
decision on Weir's N-400 application and N-336 appeal the day after Weir
filed this suit.  *See id.* at 1.

for suits against the United States for relief other than money
damages").[7]

    2.  <u>Abuse of Discretion</u>

        Weir goes on to argue that USCIS "erroneously denied"
his naturalization application "without any substantial reason
in fact and law solely because [he] requested a modified oath of
allegiance."  Am. Compl. ¶ 6.  In support of this argument, Weir
alleges that the agency failed to follow its own Policy Manual's
procedures relating to a request for a modified oath.  *See id.*
¶¶ 19–25.[8]

        Under the APA, a court may set aside an agency action
if the action is "arbitrary, capricious, an abuse of discretion,
or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A);
*Nat. Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011).
Agency decisions are arbitrary and capricious if, among other
things, the agency "relied on factors which Congress has not
intended it to consider" or "offered an explanation for its
decision that runs counter to the evidence before the agency."

---

[7] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

[8] The Manual does not give rise to any cognizable rights; its purpose is
to assist immigration officers in performing their duties.  *See* USCIS Policy
Manual, "About the Policy Manual"; *cf. Schweiker v. Hansen*, 450 U.S. 785, 789
(1981) (Social Security Act claims manual is handbook for internal use with
"no legal force," and agents' failure to follow procedure prescribed by
manual does not provide basis for estoppel against government).

*Alzokari v. Pompeo*, 973 F.3d 65, 70 (2d Cir. 2020). Relatedly, an agency abuses its discretion when it issues a decision "made without a rational explanation," or "inexplicably" departs from its own "established policies." *Pillay v. I.N.S.*, 45 F.3d 14, 17 (2d Cir. 1995) (per curiam). Weir fails to establish an APA violation.

The Court's review of an APA claim is "narrow and deferential" and limited to the administrative record. *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022). In the end, "so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007).[9]

When "an APA-based challenge to an agency's action presents a pure question of law," such as whether an agency has acted arbitrarily and capriciously, summary judgment under Rule

---

[9] An APA action may be brought only "against the United States, the agency by its official title, or the appropriate officer responsible for the contested agency action." *Brezler v. Mills*, 220 F. Supp. 3d 303, 306 n.1 (E.D.N.Y. 2016). Here, the final agency actions at issue — USCIS's decisions on Weir's N-400 application and N-336 appeal — were issued by Thomas Cioppa, then the New York District Director of USCIS, acting on behalf of the agency's director. Accordingly, Cioppa and USCIS are the only proper defendants to Weir's APA claims. *E.g.*, *id.* (dismissing claim against improper APA defendants).

56 is generally the appropriate rubric under which to address the claim.  *Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001).  In that context, the district court's task is to decide the APA claim(s) based on the administrative record "compiled by [the] agency when it made the decision" at issue.  *Clifford v. U.S. Coast Guard*, 915 F. Supp. 2d 299, 307 (E.D.N.Y.), *aff'd*, 548 F. App'x 23 (2d Cir. 2013).

In the Immigration and Nationality Act, Congress directed USCIS to consider the "religious training and belief" of an applicant for a modified oath.  8 U.S.C. § 1448(a).  The statute defines that term as an "individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation."  *Id.*  Congress cautioned, however, that the term "does not include essentially political, sociological, or philosophical views or a merely personal moral code."  *Id.*  When addressing the phrase "religious training and belief" in a different statute, the Supreme Court held that it includes a "sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by [religion]."  *Welsh v. United States*, 398 U.S. 333, 339 (1970) (addressing exemptions from military service under the Universal Military Training and Service Act); *see also United States v. Seeger*, 380 U.S. 163, 165–66 (1965).  USCIS has applied that

11

interpretation to the Immigration and Nationality Act, *see* USCIS Policy Manual, Vol. 12, Part J, Ch. 3 n.2 (citing *Welsh* and *Seeger*), as have several lower courts. *See, e.g.*, *Rafferty v. United States*, 477 F.2d 531, 533 (5th Cir. 1973); *In re Thomsen*, 324 F. Supp. 1205, 1209–10 (N.D. Ga. 1971).

Based on these directives, the USCIS Policy Manual requires an applicant seeking the modified oath to establish that: (1) he is opposed to bearing arms or performing other service in the U.S. military; (2) the objection is grounded in his religious principles or "other belief systems similar to traditional religion or a deeply held moral or ethical code"; and (3) his "beliefs are sincere, meaningful, and deeply held." USCIS Policy Manual, Vol. 12, Part J, Ch. 3. The applicant need not belong to a specific religious denomination or follow a certain theology, but he "must have a sincere and meaningful belief that has a place in [his] life that is equivalent to that of a religious belief." *Id.* Ultimately, the applicant bears the burden of proving his eligibility for the modified oath by clear and convincing evidence. *Id.*

The Manual, which is publicly available,[10] lists certain types of evidence relevant to the depth and duration of

---

[10] USCIS Policy Manual, https://www.uscis.gov/policy-manual.

the beliefs at issue.  It calls for consideration of the
following in determining eligibility for a modified oath:

- General pattern of pertinent conduct and experiences;

- Nature of applicant's objection and principles on which objection is based;

- Training in the home or a religious organization;

- Participation in religious or other similar activities; and

- Whether the applicant gained his or her ethical or moral beliefs through training, study, self-contemplation, or other activities comparable to formulating traditional religious beliefs in the home or through a religious organization.

*Id.*

The administrative record reveals no suggestion that
USCIS acted arbitrarily or abused its discretion in applying
these standards to Weir's application.  Simply put, Weir's
submission in response to the agency's Request for Evidence form
did not provide the agency with the necessary basis to alter the
oath.  The form instructed him to "[e]xplain how [his] beliefs
came about and where they are rooted from," and "how performing
a non combatant role in the military would violate these
beliefs."  CAR 29.  The instructions twice directed him to
provide "detailed" information.  *Id.*  Despite those directives,
Weir prefaced his statement by stating that he would not be
"going into too much details."  *Id.* at 25.  He then proceeded to
say virtually nothing specific about his moral beliefs

13

concerning warfare or service in a non-combatant role.  Weir did state that his belief system prioritizes "moral character" and obligates him to "have utter free-will in any actions."  *Id.* But the reference to moral character is highly general, while the need for "utter free-will" could be read to conflict with many obligations of the citizenry, including those contained in the oath.  Weir's statement thus stands in contrast to the one considered by the Second Circuit and later the Supreme Court in *Seeger*, *supra*, by way of example.[11]

---

[11] Seeger's initial letter to the Selective Service was "not lengthy." 326 F.2d 846, 848 (2d Cir. 1964).  Still, he communicated the following:

> I am bound to declare myself unwilling to participate in any violent military conflict, or in activities made in preparation for such an undertaking.  My decision arises from what I believe to be considerations of validity from the standpoint of the welfare of humanity and the preservation of the democratic values which we in the United States are struggling to maintain.  *I have concluded that war, from the practical standpoint, is futile and self-defeating, and that from the more important moral standpoint, it is unethical.*

*Id.* (emphasis added).  According to the Second Circuit's opinion, Seeger said more:

> "It is our moral responsibility," he wrote, "to search for a way to maintain the recognition of the dignity and worth of the individual, the faith in reason, freedom, and individuality, and the opportunity to improve life for which democracy stands."  In language which underscored the ethical foundation of his faith, he decried "the *tremendous spiritual price that man pays for his willingness to resort to the mass destruction of human life to perpetrate his ideals.*"  "I cannot," Seeger insisted, "participate in actions which betray the cause of freedom and humanity.  *Experience with the past indicates that our armament policy will lead to war, and war, with its indiscriminate crushing of human personality, cannot preserve moral values . . . .  To resort to immoral means is not to preserve or vindicate moral values, but only to become collaborators in destroying all moral life among men.*"

*Id.* at 848-49 (emphases added).

Further, while Weir stated that his belief system "originated in 2009" and "has been gradually developing since," CAR 25, he proffered no evidence that he has engaged in any conduct pertinent to those beliefs, received any training that gave rise to them, or participated in any activities comparable to religious worship, such as self-contemplation or study. In other words, he pointed to no outward manifestation of his beliefs that would tend to show the centrality of those beliefs in his life. The agency could reasonably have expected that a deeply held belief system would give rise to *some* such conduct or history, but Weir identified none.[12]

Weir's subsequent submission on Form N-336 offered even fewer details. There, he merely offered a series of conclusory statements — legal conclusions, by and large, couched as factual assertions. These include Weir's assertions that he had "established and passed the three-part test to qualify for [a] modification"; that his beliefs are "sincere, meaningful, and deeply held"; and that they are "not based on . . . essentially political, sociological, or philosophical views."

---

[12] Weir clearly received notice that he needed to describe the nature of, and foundation for, his beliefs in detail. As noted above, the agency's Request for Evidence explicitly instructed Weir to provide "detailed" information about his beliefs. *Id.* at 29. Moreover, in Weir's request for a hearing on the denial of his application, he directly quoted several provisions of the Manual, including from the "Evidence Establishing Eligibility" section. *See id.* at 12.

*Id.*  Once again, Weir pointed to no evidence of any conduct flowing from his beliefs.

In this Court, Weir raises two contentions in support of his argument that the defendants failed to comply with the Manual's requirements.  First, he contends that Officer Bolivar "frivolously question[ed] the existence of his belief system," Am. Compl. ¶ 25, in violation of the Manual's prohibition on questioning "the validity of what an applicant believes or the existence or truth of the concepts in which the applicant believes."  *Id.* ¶ 21 (quoting USCIS Policy Manual, Vol. 12, Part J, Ch. 3).  But Weir points to no particular question that disputed the wisdom (as opposed to the genuine nature) of Weir's beliefs.  To the extent that Bolivar's questions addressed the evidentiary factors set forth in the Manual, they were not "frivolous" and they were not a detour from the prescribed inquiry.  Indeed, the Manual expressly invites the reviewing officer to "ask an applicant questions" about those factors to assist the officer in determining whether the applicant qualifies for modification.  USCIS Policy Manual, Vol. 12, Part J, Ch. 3.  Bolivar was authorized to probe the origins, contours, and outward manifestations of those beliefs, and the record reflects no evidence that she did anything beyond that.

Second, Weir invokes the N-336 decision's reference to his belief system as a "philosophy" as evidence of the

defendants' improper devaluation of his beliefs.  Am. Compl.
¶ 18.  But USCIS gave Weir several opportunities to explain his
beliefs in detail and demonstrate his eligibility for the
modified oath.  For the reasons discussed above, however, the
agency reasonably concluded that he had not proffered sufficient
evidence to prove that his belief system was a deeply held moral
or ethical code.  Thus, Weir has identified no basis to conclude
that USCIS acted in an arbitrary or capricious manner or abused
its discretion.

**B.   Constitutional Claims**

        Weir also invokes the First, Seventh, Thirteenth, and
Fourteenth Amendments.  Again, he does not explain the basis for
these claims, and none can survive the defendants' motion to
dismiss.  For the following reasons, these claims are dismissed
against all defendants under Rule 12(b)(6).

    1.   First Amendment

        Weir fails to allege a First Amendment violation
against any of the defendants.  The First Amendment "mandates
governmental neutrality between religion and religion, and
between religion and nonreligion."  *McCreary Cnty. v. Am. C.L.
Union of Ky.*, 545 U.S. 844, 860 (2005).  Weir does not invoke
religion (or atheism) as a basis for relief; indeed, he does not
invoke any particular clause of the First Amendment at all.  As
discussed above, Weir asserts that Officer Bolivar improperly

17

questioned the "existence" of his belief system, Am. Compl.
¶ 25, but he provides no additional details bearing on this
accusation.  Moreover, he takes issue with USCIS's labeling of
his "belief system" as a "philosophy."  *Id.* ¶ 18.  To survive a
motion to dismiss under Rule 12(b)(6), Weir must allege
sufficient factual matter, accepted as true, to "state a claim
to relief that is plausible on its face."  *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009).  His threadbare allegations do not
meet this standard, even affording him the "special solicitude"
due a *pro se* litigant.  *Tracy v. Freshwater*, 623 F.3d 90, 101
(2d Cir. 2010).  Therefore, his First Amendment claim must be
dismissed under Rule 12(b)(6).

      2.   <u>Due Process</u>

      Weir's complaint lists the Fourteenth Amendment in his
litany of legal authorities, and he argues that he "never
receive[d]" the letter that USCIS mailed on February 27, 2019
directing him to return for a second interview with Officer
Bolivar regarding his naturalization application.  Am. Compl.
¶ 18; CAR 1, 3.  On that basis, and because the "actions of the
Federal Government and its officers are beyond the purview of
the [Fourteenth] Amendment," *District of Columbia v. Carter*,
409 U.S. 418, 424 (1973), I construe the complaint to allege a
due process claim under the Fifth Amendment.

A procedural due process claim requires proof of (1) the deprivation of a liberty or property interest (2) without due process.  *See Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  As set forth below, Weir has failed to plead a colorable due process violation because he has not established either element.

A person seeking citizenship has no constitutionally protected property interest in obtaining relief that resides within USCIS's discretion.  *See Krasniqi v. Holder*, 316 F. App'x 7, 8 (2d Cir. 2009) ("Krasniqi did not have a constitutionally protected liberty or property interest in a grant of adjustment of status because it is a discretionary form of relief."); *see also Yuen Jin v. Mukasey*, 538 F.3d 143, 156–57 (2d Cir. 2008); *Islam v. Barr*, 394 F. Supp. 3d 279, 286 (E.D.N.Y. 2019).  And the agency clearly exercises discretion as to requests for a modified oath.  Under the Immigration and Nationality Act, an applicant for a modified oath must prove his eligibility by "clear and convincing evidence *to the satisfaction of the Attorney General*."  8 U.S.C. § 1448(a) (emphasis added).  The Second Circuit has held that when a statute requires an applicant to establish eligibility for relief to "the

satisfaction of the Attorney General," such a statute "specifically render[s]" the determination at issue "to be within the agency's discretion." *Ruiz v. Mukasey*, 552 F.3d 269, 275 (2d Cir. 2009).  Thus, pursuant to Section 1448(a), the decision to grant a modified oath is discretionary; Weir therefore has no property interest in obtaining a modification.

In any event, Weir received notice and a hearing — the same process that he would have received if he had such a property interest.  In connection with his naturalization application, he interviewed with Officer Clanton regarding his eligibility for citizenship.  *See* Am. Compl. ¶¶ 5-6.  Then, with respect to his request for a review of the denial of that application, he again interviewed with a USCIS officer — this time with Officer Bolivar.  *See id.* ¶ 9.  In other words, Weir had two in-person opportunities to make his case to the agency that he met the qualifications for naturalization.  This satisfied the agency's due-process obligations.  In *Yuen Jin*, for example, the Court of Appeals held that (a) the petitioner had no liberty or property interest in the immigration relief sought, and, in the alternative, that (b) the agency had provided all the process that would have been due anyway.  *See* 538 F.3d at 156-57.  The same is true here.

Finally, although Weir also suggests that he did not receive a *fair* hearing with respect to his applications, *see* Am. Compl. ¶¶ 18, 25, he has not adequately alleged any improper conduct by USCIS or its officers — for the reasons discussed in the context of the APA claims. *See supra* Section II.A.; *see also Tsirelman v. Daines*, 794 F.3d 310, 317 (2d Cir. 2015) (affirming dismissal of due process claim because "due process guarantees only a fair hearing, which [plaintiff] received in full").[13]

## C.   Civil Rights Claims

Weir also asserts claims under Sections 1981, 1983, 1985, and 1986 of Title 42.  The claims under Sections 1981 and 1983 must be dismissed because those provisions "apply only to state actors, not federal officials." *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005).  Moreover, for a plaintiff to state a Section 1985 claim for conspiracy to deprive him of the equal protection of the laws, he must allege "some racial, or

---

[13] Weir's claims under the Seventh and Thirteenth Amendments also fail. While he demands a jury trial, *see* Am. Compl. ¶ 33, he otherwise does not raise any Seventh Amendment issue.  To receive a jury trial, he must demonstrate a genuine dispute of material fact on one of his other claims, and he has not done so.  *See Sullivan v. Maha*, 834 F. App'x 619, 620 n.1 (2d Cir. 2020) (rejecting argument that disposition of claims prior to trial violated plaintiff's right to a jury trial).  Thus, to the extent that Weir asserts a Seventh Amendment claim, that claim is dismissed pursuant to Rule 12(b)(6).  Further, he makes no claim that the defendants detained him in any way in violation of the Thirteenth Amendment's ban on involuntary servitude. Therefore, to the extent that he asserts a Thirteenth Amendment claim, that claim is also dismissed under Rule 12(b)(6).

21

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 834 (1983). While Weir alleges that he is "of dark complexion (Black) and born in Jamaica," Am. Compl. ¶ 32, he makes no specific allegation that the defendants conspired to violate his civil rights *because of* any racial or class-based discriminatory animus. Accordingly, this claim cannot proceed. *See Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *see also Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 208 (E.D.N.Y. 2010) (dismissing Section 1985 claim for failure to allege invidious discrimination).

Section 1986 provides a cause of action against those who "neglect to prevent" a violation described in Section 1985. Because liability under Section 1985 is a prerequisite to a claim under Section 1986, Weir's Section 1986 claim fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (affirming dismissal of Section 1986 claim based on failure to plead predicate claim under Section 1985).

For the foregoing reasons, Weir's civil rights claims are dismissed under Rule 12(b)(6).[14]

**D. Federal Tort Claims Act**

Lastly, Weir's complaint can be read to allege claims under the Federal Tort Claims Act. These claims must be dismissed under Rule 12(b)(6) because Weir cannot maintain an FTCA claim against any of the defendants. The FTCA does not permit actions against individuals. 28 U.S.C. § 2679(d)(1). Nor is USCIS a proper party to an FTCA claim because the FTCA "precludes tort suits against federal agencies. The only proper federal institutional defendant in such an action is the United States." *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991).

---

[14] The defendants have moved, in the alternative, to dismiss Weir's Section 1981 and Section 1983 claims — as well as the APA claims against Bolivar and the FTCA claims against all defendants — under Rule 12(b)(1) on the basis that one or more of the defendants are not subject to suit under the relevant statute. Such pleading deficiencies are properly resolved, however, under Rule 12(b)(6). *See, e.g., Dotson*, 398 F.3d at 162 (affirming district court's dismissal of Section 1981 and Section 1983 claims against federal officials under Rule 12(b)(6)); *Lee v. Hughes*, 145 F.3d 1272, 1277 n.6 (11th Cir. 1998) (holding that dismissal of Section 1981 claim against federal defendant should have been under Rule 12(b)(6) rather than Rule 12(b)(1)); *Bibicheff*, 55 F. Supp. 3d at 266 (dismissing Section 1983 claim against federal officers for failure to state a claim).

As the Supreme Court has observed, "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief — a merits-related determination." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006); *see also Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566-67 (2d Cir. 2016). These claims are properly dismissed for failure to state a claim.

Even if Weir had sued the United States, his tort claims would not be cognizable under the FTCA. "The FTCA does not extend to conduct governed exclusively by federal law, or to conduct of a governmental nature or function, that has no analogous liability in the law of torts." *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988). Weir does not name any analogous tort here, and the Second Circuit's decision in *Akutowicz* precludes FTCA liability in the context of citizenship adjudications. Holding that there was no private analog in tort for the revocation of citizenship, the court explained that "quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 1125–26. That reasoning applies with equal force here.[15]

### III. Conclusion

For the foregoing reasons, the defendants are awarded summary judgment on Weir's APA claims under Rule 56, and the

---

[15] The Court has considered Weir's remaining arguments as to all claims and concludes that they lack merit. Weir has also filed several other motions, including a motion for judgment on the pleadings on his APA claims, ECF No. 58; a motion to bifurcate review of the APA claims from his other claims, ECF No. 59; and a motion for sanctions against defense counsel, ECF No. 64. Weir's motions for judgment on the pleadings and to bifurcate review seek the same relief: a decision on his APA claims. *See* ECF Nos. 58, 59. Because this order resolves those claims, those motions are now moot. Moreover, Weir's sanctions motion was filed together with a motion to compel discovery, *see* ECF No. 64, in violation of Rule 11(c)(2), which provides that "[a] motion for sanctions must be made separately from any other motion." The sanctions motion is therefore denied. The Court finds Weir's remaining motions to be without merit, or moot, and denies those as well.

remaining claims are dismissed with prejudice under Rule

12(b)(6).  The Clerk of Court is respectfully directed to enter

judgment and to close this case.

        SO ORDERED.

                             /s/ Eric Komitee
                            ERIC KOMITEE
                            United States District Judge

Dated:     August 14, 2023
           Brooklyn, New York